IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION


UNITED STATES OF AMERICA,      )
                               )  1:09CR12
            Plaintiff,         )  JUNE 2, 2009
                               )
      vs                       )
                               )
MICHAEL BRUCE DARCY,           )
                               )
            Defendant.         )
_____/

TRANSCRIPT OF ELECTRONICALLY-RECORDED
MOTION FOR NO CONTACT HEARING

BEFORE THE HONORABLE DENNIS HOWELL
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE UNITED STATES      CORTNEY ESCARAVAGE, ESQ.
                           U. S. Attorney's Office
                           227 W. Trade Street
                           Charlotte, NC 28202



FOR THE DEFENDANT          FREDILYN SISON, ESQ.
                           Federal Defenders of WNC
                           1 Page Avenue
                           Asheville, NC 28801


Proceedings digitally recorded and transcript prepared by:

JOY KELLY, RPR, CRR
U. S. Official Court Reporter
Charlotte, North Carolina
704-350-7495

```
 1                    (Hearing commenced at 2:00 p.m.)

 2               THE COURT:  Ms. Sison, are you ready?

 3               MS. SISON:  Yes, I am, Your Honor.

 4               THE COURT:  All right.  Ms. Escaravage, are you

 5     ready?

 6               MS. ESCARAVAGE:  I am, Your Honor.

 7               THE COURT:  All right.  I am now going to call the

 8     case of United States of America v. Michael Bruce Darcy,

 9     which is file 1:09CR12-1, which is here pursuant to a motion

10     that has been filed by the government requesting the

11     issuance of an order ordering the defendant not to have any

12     contact with the alleged victim in this case.

13               I'll hear from any evidence presentation that the

14     government might wish to make.

15               MS. ESCARAVAGE:  Yes, Your Honor.

16               As the motion AUSA Ford filed, we're seeking --

17     the letters there were sent to the victim were submitted but

18     I know they were, they needed to be redacted so AUSA Ford

19     did redact --

20               THE COURT:  I've read them.

21               MS. ESCARAVAGE:  Okay.

22               THE COURT:  And I have this.  But I made sure that

23     they were removed from the -- tried to make sure they were

24     removed from the Court file because they referenced the

25     victim's name.
```

1          MS. ESCARAVAGE:  We appreciate that, Your Honor.

2          I do have a redacted copy.  Do you wish for me to

3    file a redacted copy at this time?

4          THE COURT:  That might be a good idea.  Let me

5    take a look at this.  Have you seen this, Ms. Sison?

6          MS. SISON:  I've seen the previous exhibits, Your

7    Honor.  I haven't seen the redactions, so if I could just

8    take a look.

9          MS. ESCARAVAGE:  If I may.

10         THE COURT:  Yes, ma'am.  Any objection, Ms. Sison?

11         MS. SISON:  No, Your Honor.

12         THE COURT:  All right.  There being no objection

13   I'm going to allow Government's Exhibit 1 into evidence and

14   scan this into the record.  Go ahead.

15         MS. ESCARAVAGE:  Your Honor, we'd also like to

16   call the victim's mother to the stand, Jane Smith.

17         THE COURT:  Ms. Smith, come around, please, ma'am.

18   Need you to come up here before the clerk, ma'am, put your

19   left hand on the Bible, raise your right.  Take the oath to

20   tell the truth right here.

21         MS. ESCARAVAGE:  All right.  Ms. Escaravage.  Go

22   ahead.

23                        **SYLVIA JANE SMITH**

24   being duly sworn, was examined and testified as follows:

25                        **DIRECT EXAMINATION**

```
                      SMITH - DIRECT
```

1  **BY MS. ESCARAVAGE**

2  Q    Can you tell us your name for the record?

3  A    Sylvia Jane Smith.

4  Q    And Ms. Smith, are you the mother of the victim in this

5  case who I'll refer to as Jane Doe No. 1?

6  A    Yes, I am.

7  Q    And where does Jane Doe reside at this time?

8  A    At 420 Clarence Potter Road, Mountain City, Tennessee.

9  Q    Okay.  And who does she live there with during the

10 week?

11 A    During the week she stays at my mother's house.

12 Q    Okay.

13 A    Which is like two minutes from my house, that's 1171

14 Fall Branch Road.

15 Q    And she resides with your mother while you're here in

16 North Carolina at work?

17 A    While I'm at work, yes.

18 Q    And during the weekend where does she usually reside?

19 A    With me.

20 Q    You don't have to give the address but is it with you

21 in Tennessee?

22 A    With me at my home in Tennessee.

23 Q    Recently did you find some letters in your mailbox?

24 A    Yes, I did.

25 Q    What about these letters concerned you?  Who were they

SMITH - DIRECT

1   from?

2   A     They were from Mr. Darcy.

3   Q     And who were they written to?

4   A     My daughter.

5   Q     And they arrived at your house a couple weeks ago.   Is

6   that correct?

7   A     I got them out of the mailbox on May 16th.

8   Q     And did you read them?

9   A     I did.

10   Q     How did you feel when you read them?

11   A     I was very upset that he was even attempting to contact

12   her.   And she has expressed, and so have I, that we do not

13   want him trying to contact her at all.

14   Q     And what kind of impact do you think it would have on

15   your daughter if Mr. Darcy were to have contact?

16   A     I think she would be very upset because she has stated

17   that she did not want any contact; that she just wanted to

18   get on with her life.

19   Q     And just to clarify, those letters we were talking

20   about that you received from Mr. Darcy, are those the

21   letters that the Court has had access to that were marked as

22   Government's Exhibit 1?

23   A     Yes, ma'am.

24         MS. ESCARAVAGE:   Is those would be our questions,

25   Your Honor.

```
                        SMITH - CROSS
```

1          THE COURT:  Ms. Sison.

2                    **CROSS EXAMINATION**

3    **BY MS. SISON**

4    Q    Ma'am, when did you intercept these letters?

5    A    On May the 16th.

6    Q    May 16th.  And I take it that your daughter did not

7    open them up.  It was just you?

8    A    Just me.  She's not aware that they even arrived.

9    Q    She's not aware at all?

10   A    Not at all.

11   Q    And you indicated that you believed that she does not

12   want to hear from Mr. Darcy at all?

13   A    Yes.  She has definitely told me she did not.

14   Q    Do you know if she's informed the U. S. Attorney's

15   Office of her desire to not hear from Mr. Darcy?

16   A    I'm not sure about the U. S. Attorney's Office, but I

17   know she has on the state level.

18   Q    On the state level.  And do you know if she's had any

19   contact with him?

20   A    No, she hasn't.

21   Q    As far as you know?

22   A    As far as I know, no.

23   Q    And are these the first letters or contact that

24   Mr. Darcy has had with her since he's been in federal

25   custody?

SMITH - CROSS

1  A    Yes.

2  Q    Okay.  And have you informed your daughter to not have

3  any contact with him at all?

4  A    Yes, I have.

5  Q    Okay.  And then she acquiesced to those wishes?

6  A    I'm sorry.

7  Q    She agrees with you that that's what she wants?

8  A    Yes.

9        MS. SISON:  All right.  Thank you, ma'am.

10        MS. ESCARAVAGE:  Just one follow-up question, Your

11  Honor.

12              **REDIRECT EXAMINATION**

13  **BY MS. ESCARAVAGE**

14  Q    Does your child, Jane Doe No. 1, have access to the

15  mail at your house or your mother's house?

16  A    Yes, she does.

17  Q    So she could just as easily be the one who happened to

18  go and check the mail on a certain day as easily as you or

19  your mother?

20  A    Yes.

21        MS. ESCARAVAGE:  No further questions, Your Honor.

22        MS. SISON:  Just one question.

23              **RECROSS EXAMINATION**

24  **BY MS. SISON**

25  Q    Now, these came to your house or to her grandmother's

```
                      SMITH - REDIRECT
```

1  house?

2  A     To my house.

3  Q     And as far as you know, no mail has gone from Mr. Darcy

4  to your mother's house?

5  A     No, none that I'm aware of.

6          MS. SISON:  Thank you, ma'am.

7          MS. ESCARAVAGE:  No further questions.

8          THE COURT:  Let me ask you this:  Do you get -- do

9  you get mail at a mailbox there at your house?

10         THE WITNESS:  A rural box, yes.

11         THE COURT:  Okay.  So you just happened to get

12  there before your daughter did that day.  Is that right?

13         THE WITNESS:  Yes, sir.  We don't check it every

14  day, and I just decided I was going to check it because I

15  had to work the next day.  And I was getting ready to leave

16  so I decided to check the mail and it was in there.

17         THE COURT:  So you were -- you live in Mountain

18  City but you work --

19         THE WITNESS:  I work in Avery County.

20         THE COURT:  Work in Avery County.  And I believe

21  you said you didn't know of any other letters that had

22  been --

23         THE WITNESS:  No.

24         THE COURT:   -- sent or received?

25         THE WITNESS:  I'm not aware of any.

1    THE COURT:  Are you aware of any other -- any

2 contacts, messages from Mr. Darcy to your daughter?

3    THE WITNESS:  No, sir, I'm not.

4    THE COURT:  Has he sent any -- has sent somebody

5 to talk to your daughter, convey a message orally?

6    THE WITNESS:  Not that I'm aware.

7    THE COURT:  How about by telephone, do you know of

8 anyone that --

9    THE WITNESS:  Not that I'm aware of.

10    THE COURT:  All right.  Any questions as a result

11 of anything I asked?

12    MS. ESCARAVAGE:  No, Your Honor.

13    MS. SISON:  No, Your Honor.

14    THE COURT:  Thank you very much.  Thank you.

15 Further evidence for the government?

16    MS. ESCARAVAGE:  No, Your Honor.

17    THE COURT:  Evidence for the defendant?

18    MS. SISON:  No, sir.  Thank you.

19    THE COURT:  All right.  The government would be

20 entitled to an opening and a closing.

21    MS. ESCARAVAGE:  Thank you, Your Honor.

22    Your Honor, if Mr. Darcy were out on bond, this

23 really wouldn't even be a question; this would have already

24 been a condition of his bond, to have no contact with any

25 witness, but particularly the victim in this case.

1    This case is a little bit unusual in the fact that

2    Mr. Darcy is in custody.  However, as a victim in this case,

3    Jane Doe No. 1 and her mother are still entitled to be

4    reasonably protected from the defendant under the Crime

5    Victims' Act of 18 United States Code 3771.  And that is

6    what we're petitioning the Court for today, for an order to

7    allow them to be protected from any contact with the

8    defendant.

9    As a mother of a minor victim in this case,

10   Ms. Smith is allowed to step in under the definition of

11   "victim" to assert the victim's rights in this case.  So

12   regardless of whether Jane Doe No. 1 has been here to say

13   today whether or not she wishes to be contacted, her mother

14   has said she does not wish for her daughter to be contacted,

15   and actually testified that her daughter has told her she

16   doesn't want to be contacted by the defendant.  Doing so

17   would be very upsetting to the daughter.

18   As Your Honor realizes in cases like this, a lot

19   of emotions are involved, and that's really what we're more

20   fearful here than any kind of physical type of injury to the

21   victim in this case, is an emotional injury.

22   You have had a chance to review these letters.

23   You know, they are very manipulative.  They are playing on

24   the fact that they had this past relationship.  He's

25   referring to keeping secrets.

1    Your Honor, these are borderline, as Ms. Ford said

2   in her motion, these are borderline tampering with

3   witnesses; promising to keep things back -- well, wanting to

4   see her again.  Saying he's going to have her -- he doesn't

5   want her to testify.  He just wants to see her again.

6    Your Honor, all those things are basically

7   manipulating a child.  If she were to have seen these

8   letters, Your Honor, it could have been very detrimental to

9   her emotional well-being.  It also could have an impact on

10  the government's case.  That's the reason why a defendant is

11  never allowed to contact any witnesses, particularly a

12  victim in this case, because it could have an impact on the

13  case.  But more importantly, it's going to have an impact on

14  the emotional well-being of this child and that's really

15  what we're here to protect.

16    Your Honor, when you order someone to have no

17  contact with the victim or a witness under a bond, they

18  comply with it because they don't want to end up in custody.

19  By ordering him to have no contact with the victim, the

20  Crime Victims' Rights Act, it's also going to give him

21  incentive, because if he doesn't, he could be held in

22  contempt under 18 United States Code 401.  That's why we're

23  seeking a court order in this case.

24    Why we know his attorney has told him not to have

25  any contact, and we hope he'll listen to her, as Ms. Ford

1 points out, he's not exercised good judgment in the past, so

2 that's why we're seeking an order here so we do have a

3 mechanism to enforce it and we can bring it back before Your

4 Honor if he should so happen to have contact with her.

5 Hopefully it won't be a problem, but we'd like to

6 know we could do something about it if we can in order to

7 protect this child.

8 So therefore we ask that you issue the order for

9 him to have no contact with the victim no matter what

10 address she's at, and have no third-party contact with her

11 either, Your Honor. It could be just as detrimental to her.

12 And for those reasons we are seeking this order in this

13 case.

14 THE COURT: Ms. Sison.

15 MS. SISON: Your Honor, I don't have any problem

16 with the Court ordering Mr. Darcy not to have any contact

17 with her, but I do want to say a number of things.

18 One, because Jane Doe here has not seen these

19 letters, I don't think we can say anything about the kind of

20 impact it would have on her. Everything right now is just

21 speculation.

22 Secondly, I think the letters can be read any

23 number of ways, and whether or not the Court believes he

24 should or should not have any contact, I don't believe I

25 agree with the government's characterization of that at this

1    point, and it becomes a moot point if the Court does order

2    it.

3              Thirdly, when I look at 3771, obviously I'm

4    concerned with the words that they have in there.  I mean

5    they are very weighted words and not typically what I

6    consider legal words.

7              If you look at 3771, it says, "The right to be

8    reasonably protected from the accused."  And I guess my

9    problem with those words is it can mean a number of things.

10   It can mean something much more than writing a letter.

11             And so what I would hope the Court would do is to

12   maybe considers still ordering it under 3771 and just

13   leaving it at that, or at the most, if we look at 3771(8),

14   which is the right to be treated with fairness and with

15   respect to the victim's dignity and privacy, I think in this

16   case I'm much more comfortable with the victim's privacy

17   rather than the very loaded and value-laden protected from

18   the accused in this case.  And that's where I am.

19             I just don't want those words to be used at trial.

20   Let's say, for example, Mr. Darcy takes a stand and he's

21   cross-examined and one of the questions is:  "Isn't it true

22   that the Judge ordered you not to have any contact pursuant

23   to 3771?  Let me read that to you."  I just don't want that

24   to come up in trial and that's what I'm concerned about at

25   this very point.

1     THE COURT:  Get specific with me:  You don't want

2  me to use, to say don't have any contact with the victim

3  pursuant to 18 United States Code 3771.  What do you want me

4  to do?

5     MS. SISON:  Your Honor, if you want to say

6  3771(a) -- and I'm not -- obviously the government wants you

7  to do it under (a)(1), which is the reasonably -- the right

8  to be reasonably protected from the accused.

9     What I'm asking this Court to do is you can get

10  the same result, that is no contact with the victim, not

11  using that specific subsection but subsection (8) which

12  talks about the privacy of the victim which is really what

13  is at issue here.

14     The word "protection" certainly implies a little

15  bit more than please don't write her letters.  And I just

16  don't want a jury who will be hearing this case in a month

17  to say, "Oh, the Judge ordered basically a protective order

18  against Mr. Darcy."  I don't want them to think that that is

19  something that the Court has already decided on.  I'm not

20  saying that's what the government is going to do, but I need

21  to think about trial in those terms.

22     And so that's what I'm concerned about.  I don't

23  want him to take the stand and then the government impeaches

24  him by using this particular statute and using those words

25  to imply that the victim needs to be protected from

1    Mr. Darcy.

2         Now, if she needs to not hear from him, which is

3    something different -- we're not saying that he did anything

4    more than send those letters and she should be afforded the

5    right not to get those letters.  But if we couch it in terms

6    of protection, then I'm just afraid that the jury is going

7    to think there's much more to it, and it certainly is a

8    judgment call by the Court rather than the jury itself.

9         So that's what I'm saying.  I'm not saying don't

10   do it.  Do it under 3771(a) and you still get the same

11   action, which is:  Do not write anything to the victim.  Do

12   not have any contact with the victim.  Do not have any

13   third-party contact with the victim.

14        So please understand what I mean by that.  I'm

15   just thinking in terms of trial, Your Honor.  And I do need

16   to protect Mr. Darcy's right at trial, unless, of course,

17   the government can say right now that they're not going to

18   use that to impeach him.

19        MS. ESCARAVAGE:  Your Honor, I'm not going to be

20   the trial attorney at trial so I can't make any promises.

21   Obviously, our goal is to have no contact with the victim.

22   If Your Honor wants to make it under a broad ruling of 18

23   United States 3771, we'll leave that in your discretion.

24        THE COURT:  Have you seen, Ms. Sison, the proposed

25   order that I received from the government?  Let me read it

1    to you and see.  It says this, "Upon motion, the United

2    States of America, by and through Edward R. Ryan, acting

3    United States Attorney for the Western District of North

4    Carolina, for an order directing that the defendant not

5    contact the victim, Jane Doe No. 1, directly or indirectly

6    through friend, family members or others through use of the

7    telephone, mail or any other reasons -- any other means.

8    And it's hereby ordered that defendant not contact the

9    victim, Jane Doe No. 1, directly or indirectly through

10   friends, family members or others through the use of the

11   telephone, mail or any other members.  The clerk is directed

12   to certify copies of this order to the United States

13   Attorney's Office."

14          MS. SISON:  I don't have a problem with that order

15   because Your Honor doesn't make any reference to 7171(a)(1).

16   However, the second motion that the government filed that

17   corrected the first motion specifically refers to it in the

18   first paragraph.

19          The second -- the motion that was filed, Document

20   30, 5/28/2009, the second sentence specifically said, "The

21   government makes this motion pursuant to 18 U.S.C.

22   3771(a)(1) and (c)(1).  And so there is a reference to that

23   particular subsection of the statute and that's all that I'm

24   having a problem with is that reference.

25          And I understand the U.S. Attorney's position at

1    this time because she's just standing in for Mr. Thornloe

2    and Ms. Ford, and I know she can't speak on their behalf but

3    at the same time, as I said, I just want to protect

4    Mr. Darcy's right at trial.

5           THE COURT:  Ms. Escaravage, any comments you want

6    to make further?

7           MS. ESCARAVAGE:  No, Your Honor.

8           THE COURT:  All right.  I take it you want me to

9    use, Ms. Escaravage, the order that was sent to me, Document

10    No. 30?

11           MS. ESCARAVAGE:  Yes, Your Honor.  That was what

12    our office submitted.

13           THE COURT:  And the defendant wants me to use the

14    order that was sent to me by the government, Document No.

15    30.

16           MS. SISON:  With the understanding, Your Honor,

17    that you're not doing it under a 3771(a)(1).  I just don't

18    want any reference back to that.  If the Court states on the

19    record that you're doing it under 3771(a)(8) which talks

20    about the victim's privacy, that certainly -- I wouldn't

21    have any objection to that.

22           And, again, I don't have an objection to the

23    Court's ruling there should be no contact.  In fact, I agree

24    with it, and it's very clear since we're having this hearing

25    and you're telling Mr. Darcy that he's having no contact, so

1    there's no misunderstanding, no questions.

2            However, as I said before, my concern is what

3    happens at trial in a month.  And again, I could see

4    somebody asking him:  "Isn't it true that the judge ordered

5    you under 3771(a)(1), and let me read that to you, sir, that

6    he ordered this."  And I just want to make it clear that we

7    have an objection to that, and I would hope that the Court,

8    given those concerns of mine at trial, that you do it under

9    31 -- or 3771(a)(1)(8).  I'm sorry (8).  (8).

10           THE COURT:  What was that contempt statute that

11   you referenced?

12           MS. ESCARAVAGE:  18 United States Code 401, I

13   believe, Your Honor, (inaudible).  Yes, sir.

14           THE COURT:  All right.  I'm going to enter an

15   order, Mr. Darcy, and what it is going to provide is this:

16           Don't have any contact with this young lady, not

17   in any way, form or fashion.  Don't send letters to her.

18   Don't send them to her mother.  Don't send them to her

19   grandmother.  Don't send them to any friend that she might

20   have with a request that you take them to her.  Don't send

21   them to any -- anybody with a request that they be taken to

22   this young lady.  Don't contact her in any way, form or

23   fashion.  If you know that -- I don't know exactly where

24   you're being detained, but I know a lot of these detention

25   facilities have telephones access to persons detained.

1    Don't call her.  Don't do it.  It's not good for her, and

2    it's not going to be good for you.  Doing that is something

3    that could really hurt her, and it's something that could

4    really hurt your legal position in this case.  It's not a

5    good idea.  And I'm directing you not to do that.

6              I know, after reading this motion I've sat and

7    struggled with what could I do if you violate that order.

8    I've already detained you.  But I can tell you this:  I'll

9    figure out something.  I'm not stupid.  I'm pretty clever

10   and I practiced law a long time.  If I find out you

11   contacted her, it will be really bad for you.  I want to

12   make sure you understand that.

13             THE DEFENDANT:  I understand that.

14             THE COURT:  All right.  I'm going to enter an

15   order just under the general statute, 18 United States Code

16   3771.  I'm not going to reference subparagraphs or

17   paragraphs.  But I am going to put in there that if this is

18   violated, I will consider it as being in contempt of court,

19   and I will then examine a full range of various types of

20   punishments that I can use.

21             And Mr. Darcy, I don't want to do that, but if you

22   make me, I will.  So let's just leave it at that.

23             All right.  Ms. Escaravage, anything else you want

24   in to put in this order?

25             MS. ESCARAVAGE:  Your Honor, I think we've covered

1      everything.  We appreciate it.

2              THE COURT:  All right.

3              MS. SISON:  No, Your Honor.  Thank you very much.

4              THE COURT:  I'm not going to use the exact order.

5      I'm going to put some other things in there, but I'll try to

6      get that out this week.  I'm going to dictate it myself.  My

7      clerk is gone.  I'm used to doing this stuff having been in

8      private practice.

9              So Mr. Darcy, please don't do this again.  It's

10     kind of like don't make me do what I'll do.

11             All right.  That will end the proceeding in regard

12     to this matter.

13             Mr. Darcy, I'm going to have to require that you

14     go with the marshals.

15                 (Hearing concluded 2:22:05)

16                        - - - -

17

18

19

20

21

22

23

24

25

1

2　**UNITED STATES DISTRICT COURT**
　　**WESTERN DISTRICT OF NORTH CAROLINA**

3

4　　　　　　　　　　**CERTIFICATE OF REPORTER**

5　　　　　　I, JOY KELLY, RPR, CRR, certify that the foregoing
　　is a true and correct transcription from the digitally
6　　recorded proceedings transcribed by me to the best of my
　　ability in the above-entitled matter.

7

8

9

10　S/　JOY KELLY　　　　　　　　　　　　　　　　　　　　　　　　　_____

11　**JOY KELLY, RPR, CRR**　　　　　　　　　　　　Date
　　**U.S. Official Court Reporter**
12　Charlotte, NC

13

14

15

16

17

18

19

20

21

22

23

24

25