# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
## Civil Case No. 1:11-cv-00311-MR
## [Criminal Case No. 1:09-cr-00012-MR-DLH-1]

| | |
|---|---|
| MICHAEL BRUCE DARCY, ) ) Petitioner, ) ) vs. ) ) UNITED STATES OF AMERICA, ) ) Respondent. ) ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on consideration of the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1] and Respondent's Motion for Summary Judgment [Doc. 11]. For the reasons that follow, Respondent's Motion for Summary Judgment will be granted, and Petitioner's § 2255 motion will be denied and dismissed.

**I.    FACTUAL BACKGROUND**

In December of 2005, Petitioner was employed as the school resource officer for Avery County High School in Avery County, North Carolina. [Trial Tr. at 6]. He also worked as the adviser for the school's "Police Explorers" program. [Id. at 7]. At that time, Jane Doe #1, the victim

in this case, attended Avery County High School as a freshman and participated in the Police Explorers program. [Id. at 5]. The victim was born on September 15, 1991. [Id. at 4].

Petitioner befriended Jane Doe #1 and the two communicated regularly via telephone and other means. [Id. at 9]. During the following summer, Petitioner began to engage in sexual contact with Jane Doe #1. [Id. at 10-12].

Petitioner continued to abuse his victim the next school year. He even concocted a phony Police Explorers field trip so he could take her to a hotel room alone for the purpose of having sex with her. [Trial Tr. at 15-17]. While they did not have sexual intercourse on that trip, Petitioner later took the victim to a hotel in Banner Elk where he had sexual intercourse with her. [Id. at 19, 27]. Petitioner continued to have regular sexual contact with the victim throughout the fall of 2006 and spring of 2007. [Id. at 32].

In May of 2007, when the victim was fifteen years old, Petitioner created another field trip for the Police Explorers, this time to the Carowinds amusement park near Charlotte, North Carolina. [Trial Tr. at 33-34]. Petitioner arranged for the group, including himself and the victim, to stay at the Motel 6 in Fort Mills, South Carolina. [Id. at 118-19]. Prior to

2

leaving, Petitioner arranged the hotel reservations so that he would have a room with an adjoining interior door to the room where the victim stayed. [Id. at 35, 38]. Petitioner drove the victim in his own vehicle from Avery County, North Carolina to the South Carolina hotel. [Id. at 35-36]. Petitioner then stayed in the same hotel room as the victim and had sex with her there. [Id. at 40].

## II. PROCEDURAL BACKGROUND

Petitioner was named as the sole defendant in a two-count indictment returned by the Grand Jury in this District. In Count One, Petitioner was charged with knowingly transporting a minor from North Carolina to South Carolina with the intent to engage in sexual activity for which he could be charged with a criminal offense under South Carolina law, in violation of 18 U.S.C. § 2423(a). In Count Two, Petitioner was charged with knowingly traveling interstate from North Carolina to South Carolina for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). [Criminal Case No. 1:09-cr-00012, Doc. 3: Sealed Indictment].

Upon his arrest, Petitioner made his initial appearance before U.S. Magistrate Judge Dennis L. Howell, at which time the Federal Defenders of Western North Carolina was appointed to represent him. Petitioner was

later arraigned and entered a plea of not guilty to the two counts in the Indictment.

Petitioner's case proceeded to a jury trial on July 13, 2009. The next day, the jury found Petitioner guilty on both counts.

Prior to sentencing, the U.S. Probation Office prepared a presentence investigation report (PSR). Applying the 2006 Guidelines manual, which was in effect at the time that the charged offenses occurred, the probation officer calculated a base offense level of 24 pursuant to U.S.S.G. § 2G1.3(a). The probation officer also recommended a number of enhancements: a two-level enhancement under § 2G1.3(b)(1)(B) because the minor had been in the supervisory control of Petitioner; a two-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) because Petitioner unduly influenced the minor child to engage in the prohibited sexual conduct; a two-level enhancement under U.S.S.G. § 2G1.3(c)(3)(B) because the offenses involved the commission of a sex act or sexual conduct; and a two-level enhancement U.S.S.G. § 3A1.1(b)(1) because the Petitioner knew or should have known that the minor child was a vulnerable victim. With the application of these enhancements, Petitioner's total offense level was calculated to be 32. With a total offense level of 32 and a criminal

history category of I, Petitioner's Guidelines range was calculated to be 121 to 151 months' imprisonment. [Id., Doc. 51: PSR].

Both parties filed objections to the PSR. Pertinent to Petitioner's § 2255 proceeding, the Government contended that the 2008 version of the Guidelines Manual should be applied in calculating Petitioner's sentence, resulting in a base offense level of 28, a total offense level of 36, and a Guidelines range of 188 to 235 months' imprisonment. In response, the probation officer noted that the Guidelines state that the Guidelines Manual in effect on the date of sentencing is to be used unless such use would increase the defendant's punishment in violation of the *ex post facto* clause. See U.S.S.G. 1B1.11. Because the 2006 version of the Guidelines Manual was in effect on May 13, 2007, and because the application of the 2008 version would increase Petitioner's punishment, the probation officer recommended that the 2006 version be applied. [Id., Doc. 54: Revised PSR at 18].

Petitioner appeared with counsel for his sentencing hearing. At sentencing, the Government maintained its position that the 2008 version of the Guidelines should apply. The Court, however, rejected this argument and applied the 2006 version for the purposes of sentencing. The Court calculated a Guidelines range of 121 to 151 months'

imprisonment. The Court imposed a sentence of 151 months, finding that the upper end of the Guidelines range was necessary in order to reflect the seriousness of Petitioner's offense. [Id., Doc. 65: Sentencing Tr. at 16-17; Doc. 57: Judgment].

Petitioner appealed, arguing that this Court erred in denying his motion for a continuance in order to obtain new counsel that Petitioner filed on the first day of trial. The Court of Appeals for the Fourth Circuit affirmed the Court's judgment, holding that this Court did not abuse its discretion in denying Petitioner's motion. See United States v. Darcy. 419 F. App'x 402, 402 (4th Cir. 2011) (per curiam).

This § 2255 proceeding followed. In his motion to vacate, Petitioner first argues that Government counsel "purposely and deceitfully" offered a plea agreement to Petitioner that included an incorrect offense-level calculation, improperly beginning with a base offense level of 28, rather than the correct base offense level of 24. [Doc. 1 at 5]. According to Petitioner, had Government counsel presented Petitioner with a plea offer containing the correct base offense level, "he *may have* accepted the plea." [Id. at 6 (emphasis added)].

Second, Petitioner asserts that his trial counsel, Fredilyn Sison, provided constitutionally deficient representation, because she failed "to

check, review, and correct the government's deceptive plea offer, . . . directly result[ing] in the [petitioner] not accepting the plea offer from the government." [Id. at 9]. Petitioner asserts that he ultimately learned that the proposed plea agreement contained an incorrect guideline calculation from a lawyer that his father sent to consult with him. [Id.].

Third, Petitioner asserts that Government counsel and Ms. Sison conspired in "an attempt to get [Petitioner] to accept a deceitful offer that would have inflated his sentence by four levels when both the prosecutor and the defense counsel knew that it was wrong," working "in harmony" and planning in secret "to keep the incorrect and misleading base guideline inserted" in the proposed plea agreement. [Id. at 12]. Petitioner asserts that, after the lawyer sent by his family found the error, he insisted that the plea agreement be corrected before he would sign it, and "defense counsel and the prosecutor both refused to insert the correct guideline." [Id.].

In response to Petitioner's motion, the Government submits an affidavit from Ms. Sison. In her affidavit, Ms. Sison acknowledges that the initial plea offer presented by the Government's counsel included "an incorrect calculation of the applicable guidelines." [Sison Aff., Doc. 10-1 at ¶ 3]. Ms. Sison states that in response to that proposed plea agreement, she informed Petitioner that she had calculated a lower applicable

7

Guidelines range but that, because Petitioner faced a mandatory minimum term of imprisonment, "neither [her] calculations nor the government's would apply to the eventual sentence even if [Petitioner] were to plead guilty because they were less than the mandatory minimum." [Id.]. In response, Petitioner "made it clear to counsel and her office that he did not want to plead guilty" and that "[h]e wanted to go to trial even if it meant a potential loss of acceptance of responsibility and a possible obstruction charge if he were to testify and be found guilty." [Id. at ¶ 4]. Ms. Sison further states that Petitioner "made it very clear that he would be going to trial" and that "he was not interested in any plea offers from the government." [Id.]. Responding to Petitioner's assertions of a conspiracy between Government counsel and Ms. Sison, Ms. Sison states that there was no such conspiracy, and she opines that Petitioner's decision to go to trial "was not related at all to the offer made by the government" and that no offer from the Government "would have convinced [Petitioner] to forego a trial." [Id. at ¶¶ 5, 6].

## II. STANDARD OF REVIEW

### A. Section 2255 Proceedings

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions

to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B. Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where the record taken as a whole could not lead a trier of fact to find for the non-moving party, however, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III. DISCUSSION

### A. Prosecutorial Misconduct

In order to state a claim for prosecutorial misconduct, a petitioner must show that the prosecutor's conduct was improper, and that the conduct caused substantial prejudice and deprived him of the right to a fair trial. See United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999).

Here, Petitioner contends that counsel for the Government purposely presented him with a proposed plea agreement which contained an erroneous calculation of the applicable Guidelines range and that, if the plea agreement had contained a correct calculation of that range, he "may have accepted the plea." [Doc. 1 at 6].

Petitioner's argument is without merit. Petitioner cannot show that the conveyance of a proposed plea agreement containing an erroneous Guidelines calculation was purposeful or improper. Moreover, Petitioner cannot show how this mistake prejudiced him, as the affidavit of Petitioner's counsel makes clear that Petitioner was not amenable to pleading guilty and was determined to go to trial. Specifically, Petitioner's counsel states that she identified the mistake in the plea agreement proposed by the Government and was prepared to correct the mistake in any plea agreement ultimately signed by Petitioner; however, Petitioner made it clear that he was not interested in pleading guilty no matter what was provided for in any proposed agreement. Petitioner further cannot

establish any prejudice because he states, at most, that he "may have" accepted the plea had the calculation been correct. For all of these reasons, Petitioner's claim for relief based upon alleged prosecutorial misconduct fails.

    **B.    Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." <u>Id.</u> at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. <u>Id.</u>

To demonstrate prejudice, Petitioner must show a probability that the alleged errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Murray v. Carrier</u>,

11

477 U.S. 478, 494 (1986) (italics in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of MD., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)), cert. denied, 464 U.S. 1065 (1984). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 926 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

In the present case, Petitioner asserts that Ms. Sison was ineffective when she failed to identify the error in the proposed plea agreement and then conspired with Government counsel to induce Petitioner to enter into a plea agreement that would have resulted in a higher sentence. Ms. Sison's affidavit, however, unequivocally refutes Petitioner's claim of a conspiracy

between her and Government counsel, making clear that there was no such

collusion. Likewise, Ms. Sison's affidavit establishes that she did not provide deficient representation by failing to notice the mistaken Guidelines calculations in the proposed plea agreement and that she did not encourage or recommend that Petitioner sign a plea agreement containing the mistaken calculation. Rather, Ms. Sison makes clear that she noticed the error and brought the error to Petitioner's attention.

As Ms. Sison notes in her affidavit, the mistake in the Government's proposed plea agreement would not have affected the applicable statutory mandatory minimum term of 10 years in prison that Petitioner faced for the transportation offense charged in Count One, which would have trumped the Guidelines range as to that count had Petitioner pleaded guilty and received the benefit of a three-level reduction in his offense level. In any event, however, Ms. Sison's affidavit makes clear that Petitioner expressed his determination to go to trial and that he was not interested in any plea offers from the Government. Accordingly, the Court concludes that

13

Petitioner cannot show either deficient representation or prejudice, and his claims of ineffective assistance of counsel fail as a matter of law.[1]

IV. **CONCLUSION**

Based on the foregoing, the Court finds that Petitioner's § 2255 motion is without merit and should be dismissed.

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**ORDER**

---

[1] Petitioner also contends that Ms. Sison provided ineffective representation by threatening him and being otherwise hostile to him. Petitioner's claim, however, is merely conclusory and fails to support an inference that any such alleged behavior impeded his decision of whether to plead guilty or go to trial. Accordingly, any ineffective assistance claim based on this alleged conduct also fails.

**IT IS, THEREFORE, ORDERED** that Respondent's motion for summary judgment [Doc. 11] is **GRANTED**, and Petitioner's motion to vacate, set aside or correct sentence [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 9, 2015

Martin Reidinger
United States District Judge